IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CAPSUGEL BELGIUM NV and
CAPSUGEL US, LLC,

        Plaintiff,

v.

BRIGHT PHARMA CAPS, INC., JC
BRIGHT M LTD., JC BIO-TECH CO
LTD., and KARL CAO,

        Defendants.

3:15-cv-321-PK

OPINION AND ORDER

PAPAK, Magistrate Judge:

    Plaintiff Capsugel Belgium NV filed this action against Defendant Bright Pharma Caps, Inc. ("Bright Pharma") on February 24, 2015 (#1). On July 6, 2015, Capsugel Belgium NV filed an Amended Complaint (#19) joining Capsugel US, LLC (collectively with Capsugel Belgium NV, "Capsugel") as a plaintiff and JC Bright M Ltd. ("JC Bright"), JC Bio-Tech Co. Ltd. ("JC Bio"), and Karl Cao as defendants. Capsugel's Amended Complaint asserts claims under Oregon and federal law for false advertising, unfair competition, and patent infringement. All of Capsugel's claims arise from or relate to Defendants' production, marketing, and sale of Bright-Poly capsules.

    The current discovery dispute arises from Capsugel's Motion to Compel (#40) Defendants to disclose the identities of third-parties suppliers that provide the ingredients Defendants use to make Bright-Poly capsules (the "supplier identities"). Capsugel argues that Defendants' inadequate discovery responses have rendered Capsugel unable to determine the

OPINION AND ORDER Page | 1

ingredients and processes used to make Bright-Poly capsules and that Capsugel will only be able to fairly litigate its claims if Defendants disclose the supplier identities. Defendants oppose Capsugel's motion, arguing the supplier identities are only marginally relevant and constitute highly valuable trade secrets, the disclosure of which would place Defendants at a competitive disadvantage. In the alternative, Defendants move the court for a thirty-day extension of time to reply to Capsugel's discovery requests if the court grants Capsugel's Motion to Compel.

The parties seek a ruling on this issue as soon as possible to prepare for the deposition of Defendant Cao. *See* Joint Notice Re 'Supplier' Issues 1 (#52). For the reasons provided below, Capsugel's Motion to Compel (#40) is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties to this case are involved in the manufacture and distribution of empty pill capsules. Plaintiff Capsugel is "the world's leading provider of empty, two-piece hard capsules." Am. Compl. 3. Bright Pharma is an Oregon corporation that sells Bright-Poly capsules, which are the pullulan-based two-piece capsules at issue in this case. JC Bio and JC Bright supply Bright-Polly capsules to Bright Pharma. Bright-Poly capsules compete with Capsugel's pullulan-based capsules. Cao controls the content of Bright Pharma's webpage.

Capsugel alleges that Bright-Poly capsules infringe upon Capsugel's patents. Capsugel further alleges that the organic line of Bright-Poly capsules contains the synthetic substance sodium lauryl sulfate ("SLS"). Capsugel contends Defendants intentionally misrepresent the contents of Organic Bright-Poly capsules by labeling them "organic" and by advertising them as containing "[o]nly three ingredients . . . NOP Certified Non GMO pullulan, Purified water, [and] Carrageenan from sea weed." *See* First Am. Compl. ¶¶ 64-65; Mot. to Compel 6-7.

The parties agree that SLS is a synthetic ingredient that cannot be added during the processing or handling of organic products. Answer to Am. Compl. ¶¶ 44-46 (#27). Capsugel purports to have performed tests on Organic Bright-Poly capsules, the results of which revealed the presence of SLS. Mot. to Compel 6. Bright Pharma admits that SLS is sprayed on non-organic Bright-Poly capsules after the capsules are fabricated, but denies that Organic Bright-Poly capsules contain SLS. Answer to Am. Compl. ¶¶ 37-38, 148; Tran Decl. Ex. A at 5 (#41-1).

On May 22, 2015, this court entered a detailed Stipulated Protective Order (#12) to facilitate the discovery of confidential information in this case, including trade secrets. The order provides for three levels of confidentiality: Confidential, Confidential—Attorneys' Eyes Only, and Confidential—Outside Attorneys' Eyes Only. *See* Prot. Order 1.

Capsugel served Defendants with requests for production on April 3, 2015, June 2, 2015, and August 12, 2015. *See* Heuser Decl. Ex. A at 11-13, 20-21, 34-35 (#39-1). Capsugel's first set of requests for production sought documentation of all of the ingredients and processes used to make Bright-Poly capsules. *See, e.g.*, Heuser Decl. Ex. A at 4 (#39-1).[1]

In responding to Capsugel's requests for production, Defendants produced documents purporting to show all of the ingredients and processes used to make Bright-Poly capsules but redacted the supplier identities from those documents. Capsugel contested those redactions and

---

[1] Contrary to Defendants' contentions, several of these requests were sufficiently broad to encompass the supplier identities. See Heuser Decl. Ex. A at 3, 4, 31 (#39-1) ("REQUEST FOR PRODUCTION NO. 1: All contracts, agreements, or understandings, formal or informal, between (or including as parties) BPC and JCB. . . . REQUEST FOR PRODUCTION NO.2: All contracts, agreements, or understandings, formal or informal, between (or including as parties) BPC and JCB China. . . . REQUEST FOR PRODUCTION NO. 6: All contracts, agreements, or understandings, formal or informal, between (or including as parties) JCB and JCB China. . . . REQUEST FOR PRODUCTION NO. 86: All documents and emails related to any Bright-Poly capsules (including samples) made, used, offered for sale, or sold in the United States and/or imported or otherwise shipped or transported into the United States by or for Defendant Karl Cao.").

several other alleged deficiencies in Defendants' discovery responses in an August 12, 2015 email to the court. The court heard telephonic oral arguments concerning those discovery disputes on August 20, 2015. The court then entered a Minute Order (#35) construing Capsugel's August 12 email as a formal Motion to Compel and resolving the majority of the parties' discovery disputes. The court's Minute Order did not resolve the issue whether Defendants are entitled to withhold the supplier identities. The court instructed the parties to submit supplemental briefing on that issue by August 27, 2015. The parties' timely submitted additional briefing, and the issue is now ready for resolution.[2]

## LEGAL STANDARDS

### I. Permissible Scope of Discovery

Parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. Pro. 26(b)(1). Information is relevant if it has a tendency to make any fact of consequence more or less probable that it would be without the information. Fed. R. Evid. 401. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

### II. Motion to Compel

Federal Civil Procedure Rule 37(a)(3)(B) empowers a propounding party to "move for an order compelling an answer, designation, production, or inspection" if:

(i) a deponent fails to answer a question asked under Rule 30 or 31;
(ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);
(iii) a party fails to answer an interrogatory submitted under Rule 33; or

---

[2] Defendants' brief was captioned as a Motion for a Protective Order (#37). On September 14, 2015, the parties filed a "Joint Notice Re 'Supplier' Issue Reserved at August 20, 2015 Hearing" (#52) clarifying that both Capsugel's Motion to Compel and Defendants' Motion for a Protective Order should be construed as formal briefing on the supplier issue and not new motions raising additional issues.

(iv) a party fails to respond that inspection will be permitted--or fails to permit inspection--as requested under Rule 34.

Rule 37(a)(4) provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Rule 26 provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. Pro. 26(b)(1).

### III. Discovery of Trade Secrets, Generally

Courts within the Ninth Circuit generally follow a three-step burden-shifting approach in determining whether to compel disclosure of trade secrets. *See, e.g., Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-CV-04984JST (MEJ), 2015 WL 433481, at *2 (N.D. Cal. Feb. 2, 2015). At the first step, the party resisting disclosure bears the burden of establishing that the information sought is a trade secret and that disclosure may be harmful. *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 617 (N.D. Cal. 2006) (citation and internal quotation marks omitted). If the resisting party makes this showing, the burden shifts to the party seeking disclosure to show that the trade secrets are both relevant and necessary to the proper presentation of a claim or defense. *See, e.g., Hartley Pen Co. v. U.S. Dist. Court*, 287 F.2d 324, 331 (9th Cir. 1961); *see also Trevino*, 232 F.R.D. at 617 ("The burden then shifts to the party seeking the discovery to demonstrate that the information is relevant and necessary to prepare the case for trial." (citation and internal quotation marks omitted)).

At the third and final step of the analysis, the court must "weigh the risk of disclosure of the trade secret to unauthorized parties with the risk that a protective order will impede prosecution or defense of the claims." *Todd*, 2015 WL 433481, at *2 (citation omitted). "Once the moving party has established relevance and necessity, the discovery is virtually always ordered." *Id.* (citations and internal quotations omitted).

OPINION AND ORDER Page | 5

## ANALYSIS

The parties do not dispute that the supplier identities constitute trade secrets, the disclosure of which could be harmful. *See* Prot. Order 1. The issue before the court is whether disclosure of the supplier identities is nevertheless warranted. Therefore, the first issue the court must resolve is whether Capsugel has shown that the supplier identities are both "relevant and necessary to the proper presentation" of a claim or defense. *Hartley Pen Co.*, 287 F.2d at 331. The court must then determine whether the risk of disclosure of the trade secret to unauthorized parties outweighs the risk that nondisclosure would impede Capsugel's ability to litigate its claims. *See Todd*, 2015 WL 433481, at *2 (citations and internal quotations omitted). For the reasons provided below, I find that the supplier identities are both relevant and necessary and that there is not a significant risk of disclosure to unauthorized parties. I therefore grant Capsugel's Motion to Compel (#40).

### I. Relevancy and Necessity

I analyze relevance with respect to each of Capsugel's claims separately. Following the relevancy analysis, I discuss necessity with respect to all claims.

#### A. False Advertising and Unfair Competition

Capsugel argues that Defendants have failed to provide adequate documentation of the ingredients and processes used to make Bright-Poly capsules. *See* Mot. to Compel 2. As a result, Capsugel argues, "Complete disclosure of information about all 'ingredients' used by Defendants, including suppliers, product names, lot numbers, supplier certificates of analysis, and even samples is required to fairly litigate Defendants' misrepresentations and knowledge or state of mind regarding what is in their capsules." Mot. to Compel 7. In essence, Capsugel contends that only by identifying the suppliers will it be able to determine how SLS came to be

included in the organic capsules, whether Defendants knew about its inclusion, and whether there are any other ingredients in the capsules that render Defendants' advertising misleading.

Defendants argue that Capsugel has not shown why the supplier identities are relevant or necessary. Mot. for Protective Order 2,6 (#37). According to Defendants, "The only plausible reason Capsugel wants the supplier information is to leverage JC Bio-Tech's contacts for commercial advantage, a purpose that has nothing to do with the allegations in this lawsuit." Mot. for Protective Order 5.

I find Capsugel has shown the supplier identities are relevant to the proper presentation of the following three aspects of its false advertising and unfair competition claims: (1) Capsugel's ability to assert a claim for false advertising and unfair competition under Oregon law, (2) Defendants' liability for false advertising and unfair competition, and (3) the appropriate measure of damages.

### B. Patent Infringement Claims

Capsugel asserts four patent infringement claims in Counts Three through Six of its First Amended Complaint. *See* First Am. Compl. 20-24. Counts Three and Four require Capsugel to prove that the allegedly infringing capsules are made with certain ingredients. *See* Mot. to Compel 8, 9. Capsugel argues that the supplier identities are relevant and necessary to its presentation of those claims because testing of Defendants' capsules revealed the presence of some infringing ingredients but Defendants nevertheless deny that those ingredients are in their capsules. *See* Mot. to Compel 8. Therefore, Capsugel argues, "Complete disclosure of information about all ingredients and processes used by Defendants, including ingredient suppliers, product names, lot numbers, supplier certificates of analysis, and even samples are required to fairly litigate Defendants' denials . . . ." Mot. to Compel 8.

Capsugel further argues that Defendants' ambiguous discovery responses make the supplier identities relevant and necessary to its presentation of its patent claims. For example, some of Capsugel's infringement claims require the infringing product to contain kappa carrageenan. Mot. to Compel 9. While Defendants have publicly disclosed that their capsules contain "carrageenan from sea weed" and "sea weed extract powder," Capsugel argues that those disclosures are inadequate because they fail to identify the specific type of carrageenan Defendants' capsules contain. Mot. to Compel 9. Capsugel has presented evidence that there are at least three types of carrageenan that could be used to make Bright-Poly capsules. *See* Tran Decl. Ex. B at 2 (#41-2). In response to Capsugel's requests for admissions, Bright Pharma stated that it lacks sufficient information to determine whether its capsules contain kappa carrageen. *See* Tran Decl. Ex. A at 4. Therefore, Capsugel argues, Defendants must disclose the supplier identities so Capsugel can determine whether Defendants' capsules contain kappa carrageenan.

Capsugel also argues that the supplier identities are relevant and necessary to prepare and present its claim that Defendants' infringement was willful. *See* Mot. to Compel 8.

Defendants argue that because Capsugel is a direct business competitor, disclosure of the supplier identities would unfairly disadvantage Defendants. Mot. for Protective Order 2. Defendants hypothesize that if it were required to disclose the supplier identities, Capsugel could learn of the supplier's identities, "such as by a missent email or the like," and could "easily leverage these contacts . . . and potentially push Defendants out of the supply chain altogether." Mot. for Protective Order 5-6. Defendants further argue that "Capsugel has failed to articulate relevance and necessity with any reasonable particularity, and . . . [e]ven if Capsugel

demonstrates some limited relevance and necessity of this information, the burden upon Defendants still outweighs any benefit to Capsugel." Mot. for Protective Order 7.

I reject Defendants' argument that disclosure of the supplier identities would unfairly disadvantage Defendants. As discussed in detail below, the Stipulated Protective Order currently in place in this matter sufficiently accounts for that concern. I also reject Defendants' argument that Capsugel has failed to articulate with sufficient particularity that the supplier identities are relevant and necessary. Defendants cite two cases in support of that argument, *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002) and *Cabell v. Zorro Productions, Inc.*, 294 F.R.D. 604 (W.D. Wash. 2013). Mot. for Protective Order 7. Both cases are inapposite. *Phillips* merely established that in ruling on a motion for a protective order, the trial court must expressly consider whether the movant has shown good cause, regardless of the movant's proffered justification for the order. 307 F.3d at 1210-12.

The *Cabello* court held that "[w]here the relevance of the requested information is low, avoiding the harm that comes with the burden of overbroad discovery constitutes good cause for a protective order." 294 F.R.D. at 609 (citation and internal quotation marks omitted). However, the "burden of overbroad discovery" that the court was considering in that case was the expenditure of substantial amounts of time and money to produce a bevy of documents. *See id.* This case is easily distinguishable, as the requested information is readily available to Defendants and would not require an arduous document production.

I agree that the supplier identities are relevant to whether Bright-Poly capsules contain infringing ingredients, and if so, whether Defendants' infringement was willful. Therefore, the supplier identities are relevant to Capsugel's patent infringement claims.

## C. Necessity

Bright Pharma's assertion that none of the capsules contain SLS is difficult to reconcile with its admission that the non-organic capsules are sprayed with SLS and with the test results showing the presence of SLS in the organic capsules. In light of Defendants' inadequate discovery responses, Capsugel will only be able to prepare and present its claims if it acquires the supplier identities.

Furthermore, Defendants pleaded as an affirmative defense that Organic Bright-Poly capsules do not contain SLS. Answer to Am. Compl. ¶ 148. Capsugel will not be able to adequately contest that defense if it is unable to confirm the results of its testing showing that the organic capsules contain SLS. Therefore, discovery of the supplier identities is necessary. *See Bare Escentuals Beauty, Inc. v. Costco Wholesale Corp.*, No. 07CV90, 2007 WL 4357672, at *3 (S.D. Cal. Dec. 11, 2007) (holding that Magistrate properly determined that disclosure of Defendant's supplier's identity was necessary where such disclosure would help Plaintiff assess Defendant's affirmative defense).

## II. Balancing the Risk of Disclosure to Unauthorized Parties Against the Interest in Effective Presentation of Claims and Defenses

The next issue is whether the risk of disclosure of Defendants' trade secrets to unauthorized parties outweighs the risk that nondisclosure would impede the proper presentation of the claims and defenses in this case. *See Todd*, 2015 WL 433481, at *2 (setting forth the applicable legal framework for discovery of trade secrets). I find that it does not.

As stated above, a Stipulated Protective Order (#12) has been entered in this case. That order provides three levels of protection, including a "Confidential—Outside Attorneys' Eyes Only" level. Prot. Order 1. Capsugel argues that the Stipulated Protective Order provides sufficient protection against disclosure of the supplier identities to unauthorized parties. *See*

Mot. to Compel 4. Defendants do not directly respond to Capsugel's argument on this point, but instead contend that the protections afforded by the Stipulated Protective Order are irrelevant to whether it must disclose the supplier identities because Capsugel has failed to carry its burden of establishing that the information is relevant and necessary. *See* Mot. for Protective Order 8.

The Stipulated Protective Order provides sufficient protection against disclosure to unauthorized parties. At least one court within the Ninth Circuit has found that a protective order less restrictive than the one in place in this matter is sufficient to tip the balance of interests in favor of ordering disclosure of confidential supplier identities. *See Bare Escentuals Beauty*, 2007 WL 4357672, at *4 (finding sufficient an Attorneys' Eyes Only protective order).

Furthermore, several well-reasoned opinions from trial courts outside the Ninth Circuit provide persuasive authority for the proposition that the Stipulated Protective Order in this case provides sufficient protection against disclosure to unauthorized parties. *See, e.g., Taiyo Int'l, Inc. v. Phyto Tech Corp.*, 275 F.R.D. 497, 501 (D. Minn. 2011) ("Where the parties have agreed to a protective order, particularly one with 'Attorneys' Eyes Only' designation, even a very sensitive trade secret will be sufficiently protected and should be produced if relevant." (citations omitted)); *Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 107 F.R.D. 288, 298-99 (D. Del. 1985) ("The potential harm that would come from public disclosure of the formulae for old Coke, new Coke, diet Coke, and caffeine free Coke is great, but virtually all of that harm can be eliminated with stringent protective orders and other safeguards." (citation omitted)); *see also Apple, Inc. v. Samsung Elecs. Co.*, No. C 11-1846 LHK PSG, 2012 WL 5878392, *2 (N.D. Cal. Nov. 21, 2012); *Bd. of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 521, 523 (C.D. Cal. 2008).

Defendants do not argue that an Outside Attorneys' Eyes Only protective order is insufficient to protect against the risk of disclosure to unauthorized parties. Instead, Defendants rely entirely on their argument that Capsugel has not carried its burden of showing that the supplier identities are relevant and necessary. *See* Mot. for Protective Order 8. However, as detailed above, I have already rejected that argument. Consequently, I find that the risk of disclosure to unauthorized parties does not outweigh the risk that nondisclosure would impede the proper presentation of the claims and defenses in this case.

## CONCLUSION

For the reasons provided above, Capsugel's Motion to Compel (#40) is GRANTED and Defendants are ORDERED to produce the supplier identities, product names, lot numbers, supplier certificates of analysis, and product samples.

Defendants move the court for a thirty-day extension of time to produce the supplier identities in the event Capsugel's Motion is granted. Mot. for Protective Order 9 (#37). Given the Defendants' apparent ability to easily produce the supplier identities, Defendants' Motion for an Extension of Time is DENIED and Defendants are ORDERED to produce the information subject to Plaintiff's Motion to Compel within fourteen (14) days of the date of this order.

Dated this 28th day of September, 2015.

Honorable Paul Papak
United States Magistrate Judge