IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CAPSUGEL BELGIUM NV and
CAPSUGEL US, LLC,

        Plaintiffs,

v.

BRIGHT PHARMA CAPS, INC., JC
BRIGHT M LTD., JC BIO-TECH CO
LTD., and KARL CAO,

        Defendants.

3:15-cv-321-PK

OPINION AND ORDER

PAPAK, Magistrate Judge:

    Plaintiff Capsugel Belgium NV filed the instant action against Bright Pharma Caps, Inc. ("Bright Pharma") on February 24, 2015. On July 6, 2015, Capsugel Belgium NV filed an Amended Complaint (#19) joining Capsugel US, LLC (collectively with Capsugel Belgium NV, "Capsugel") as a plaintiff and JC Bright M Ltd. ("JC Bright"), JC Bio-Tech Co. Ltd. ("JC Bio"), and Karl Cao as defendants. Capsugel's Amended Complaint asserts claims for patent infringement as well as claims for false advertising and unfair competition under the Lanham Act and Oregon law. All of Capsugel's claims arise from or relate to Defendants' production, marketing, and distribution of Bright-Poly brand empty pill capsules. The court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

    Now before the court is Defendant JC Bio's Motion to Dismiss (#48) ("JC Bio's Motion"), in which JC Bio argues Capsugel's claims against it should be dismissed because it was not properly served with process and because the court lacks personal jurisdiction over it.

OPINION AND ORDER Page | 1

The court has reviewed the record, the relevant exhibits, and all of the briefing. For the reasons provided below, JC Bio's Motion is DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Capsugel is a manufacturer and distributor of empty pill capsules. Bright Pharma is an Oregon corporation with its principal place of business in Hood River, Oregon. Bright Pharma wholesales Bright-Poly brand pill capsules, which are eventually purchased by customers in Oregon and throughout the United States.

Capsugel alleges Bright-Poly Capsules infringe upon Capsugel's patents and that the organic line of Bright-Poly capsules contains the synthetic substance sodium lauryl sulfate ("SLS"), which is not permitted in organic products. Capsugel further alleges Defendants intentionally misrepresent the contents of Organic Bright-Poly capsules by labeling them "organic" and by advertising them as containing "[o]nly three ingredients . . . NOP Certified Non GMO pullulan, Purified water, [and] Carrageenan from sea weed."

JC Bio is a Chinese company that manufactures and supplies Bright-Poly capsules to Bright Pharma. JC Bio is not registered to do business in Oregon. However, JC Bio has shipped Bright-Poly capsules to Bright Pharma, and those shipments have arrived at ports throughout the United States, including the Port of Portland, Oregon.

On July 7, 2015, Capsugel attempted to effectuate service of process upon JC Bio by sending a copy of the Amended Complaint and summons by both first class mail and certified mail, return receipt requested, to JC Bio at 1908 Orchard Road, Hood River, Oregon, 97031. That address was listed as JC Bio's address in the following documents: (1) a Material Safety

---

[1] For the purpose of ruling on JC Bio's Motion, the court resolves conflicts between the facts in the parties' affidavits in Capsugel's favor and accepts Capsugel's version of the facts, where not directly controverted, as true. *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citation omitted) (internal quotation marks omitted).

Data Sheet for Bright-Poly capsules[2], (2) Oregon Tilth online records pertaining to JC Bio, (3) organic certifications issued by Oregon Tilth to JC Bio on August 4, 2014; November 7, 2014; and May 8, 2015, (4) program compliance certifications issued by Oregon Tilth to JC Bio on November 7, 2014 and May 8, 2015, and (5) the United States Department of Agriculture's ("USDA") most recent online list of certified USDA organic operations.

On July 9, 2015, Tess Barr, a co-owner of Bright Pharma, signed the return receipt for the certified mailing and also received the first class mailing containing the summons and Amended Complaint. Barr subsequently testified that she is not an officer or agent of JC Bio.

On July 23, 2015, JC Bio and the other defendants, represented by Peter Heuser, filed "Defendants' Unopposed Motion For Extension of Time to Respond to Plaintiff's First Amended Complaint" ("Motion for Extension of Time"). On July 24, 2015, the court granted that motion. Order (#26). JC Bio sought no further extensions and did not otherwise respond to the Amended Complaint until it filed the present Motion.

On July 29, 2015, Capsugel informed Peter Heuser—who Capsugel thought was JC Bio's counsel—that Capsugel had served JC Bio in Hood River at the address that was provided to Oregon Tilth in connection with the organic certification of JC Bio. Although Heuser also thought he represented JC Bio, and therefore filed the Motion for Extension of Time on JC Bio's behalf six days earlier, he was mistaken; JC Bio had not actually retained him. JC Bio subsequently retained Heuser for the limited purpose of filing the present motion.

---

[2] The Material Safety Data Sheet also listed defendant Bright Pharma as residing at the same Hood River address.

OPINION AND ORDER Page | 3

## LEGAL STANDARDS

### I. Service of Process

Proper service of process is required before a court can assert personal jurisdiction over a defendant. *See, e.g., Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (citation omitted). If service of process is challenged prior to entry of default, the plaintiff bears the burden of establishing the validity of service of process. *See Gordon v. United Rentals, Inc.*, No. CIV. 09-1344-HU, 2010 WL 1039609, at *2 (D. Or. Mar. 12, 2010); *see also S.E.C. v. Internet Solutions for Bus. Inc.*, 509 F.3d 1161, 1163 (9th Cir. 2007) ("[A] defendant moving to vacate a default judgment based on improper service of process, where the defendant had actual notice of the original proceeding but delayed in bringing the motion until after entry of default judgment, bears the burden of proving that service did not occur.").

Service of a foreign corporation within the United States can be effectuated in two ways: (1) "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant" or (2) by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(h). "[N]either actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without 'substantial compliance with Rule 4.'" *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (quoting *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)), *amended*, 807 F.2d 1514 (9th Cir. 1987)

### II. Personal Jurisdiction

An action must be dismissed where the court lacks personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). There are two components to personal jurisdiction: first, the forum state's long-arm statute must permit the assertion of jurisdiction, and second, the assertion of jurisdiction must comport with federal constitutional due process mandates. *See, e.g., Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996). Oregon's long-arm statute permits assertions of personal jurisdiction to the full extent allowed under the federal constitution. *See* Or. R. Civ. P. 4 L; *Millennium Enterprises, Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 909 (D. Or. 1999). "Thus, the analysis collapses into a single framework and the court proceeds under federal due process standards." *Millennium Enterprises*, 33 F. Supp. 2d at 909. Constitutional due process requires there to be sufficient "minimum contacts" between the party over whom jurisdiction is being exercised and the forum state such that "traditional notions of fair play and substantial justice" are not offended. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

On a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction. *See, e.g., Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *accord Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). "Although the plaintiff cannot rest solely on the allegations of the complaint to establish that jurisdiction is proper, the complaint's uncontroverted factual allegations must be accepted as true and any factual conflicts in the parties' declarations must be resolved in the plaintiff's favor." *Ukrvaktsina v. Olden Grp., LLC*, No. CIV. 10-6297-AA, 2011 WL 5244697, at *1 (D. Or. Oct. 30, 2011) (citing *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977); *accord Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003)).

If the court rules on a motion to dismiss for lack of personal jurisdiction without first holding a pretrial evidentiary hearing, the plaintiff is only required to establish, through pleadings and affidavits, a prima facie showing of personal jurisdiction. *E.g., Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citation omitted); *accord Celgard, LLC v. SK Innovation Co.*, 792 F.3d at 1378. Even where the plaintiff successfully makes a prima facie showing of personal jurisdiction, it must still establish the jurisdictional facts by a preponderance of the evidence at some time prior to the close of proceedings. *See Data Disc, Inc. v. Sys. Tech. Associates, Inc.*, 557 F.2d 1280, 1289 n.5 (9th Cir. 1977).

## DISCUSSION

### I. Service of Process

Capsugel properly served JC Bio with process. Federal Rule of Civil Procedure 4(h)(1)(A) permitted Capsugel to serve JC Bio in any manner consistent with Oregon law. Under Oregon Law, service upon a corporate defendant is presumptively valid if it was effectuated by a method enumerated in Oregon Rule of Civil Procedure 7D(2)-(3). *See Baker v. Foy*, 797 P.2d 349, 354 (Or. 1990). If the presumption arises and there is nothing in the record to rebut it, the action cannot be dismissed for invalid service of process. *See id.* Conversely, if service of process was not effectuated in accordance with an enumerate provision of Rule 7D(2)-(3), or if there is evidence in the record to overcome the presumption of valid service, service of process is valid only if it satisfies the "reasonable notice" standard set forth in Rule 7D(1). *See id.* at 354-55.

#### A. Oregon's Enumerated Rules for Service of Process

Enumerated rule 7D(3)(b)(ii)(C) permits service upon a corporate defendant by first class mail and certified mail, return receipt requested, when a registered agent, officer, or

director of the corporation cannot be found in the county where the action is filed. When the corporate defendant is not authorized to do business in Oregon, the mailing must be addressed to the corporation's principal place of business or "to any address the use of which the plaintiff knows or has reason to believe is most likely to result in actual notice." *Id.*

In this case, Capsugel mailed a copy of the summons and Amended Complaint to JC Bio at 1908 Orchard Road, Hood River, Oregon, 97031. There is no evidence that JC Bio had a registered agent, officer, or director anywhere in the state of Oregon.[3] Therefore, Capsugel was permitted to serve JC Bio by mail. *See id.*; *see also Mech. Mktg., Inc. v. Sixxon Precision Mach. Co.*, No. 5:CV 11-01844 EJD, 2011 WL 4635546, at *2 (N.D. Cal. Oct. 6, 2011).

JC Bio does not dispute that Capsugel sent copies of the summons and Amended Complaint through both first class mail and certified mail, return receipt requested, to JC Bio as expressly permitted by Rule 7D(3)(b)(ii)(C). Thus, the only remaining question is whether the Hood River address was the proper address for effectuating service of process under Oregon law.

Service at the Hood River address was proper because that was the address Capsugel knew, or had reason to believe, was the most likely to result in actual notice. *See id.* Capsugel determined that the Hood River address was the proper address to effectuate service at because it was listed as JC Bio's address on the Material Safety Data Sheet for Bright-Poly capsules and on two certifications from Oregon Tilth to JC Bio.[4] Importantly, JC Bio had a legal obligation to

---

[3] Capsugel notes in its brief that JC Bio had a Hood River agent pursuant to FDA regulations regarding foreign facilities. However, that agent was merely an emergency contact for the FDA, not a registered agent for service of process.

[4] As stated above, the Hood River address was also listed as JC Bio's address in numerous other documents. However, in analyzing whether service was proper, the court only considers those documents that Capsugel knew about at the time it attempted to effectuate service. *See* Or. R. Civ. P. 7D(3)(b)(ii)(C) (permitting service by mail at any address "the use of which the plaintiff *knows or has reason to believe* is most likely to result in actual notice" (emphasis added)).

OPINION AND ORDER Page | 7

maintain an accurate address on the Material Safety Data Sheet. *See* 29 C.F.R. § 1910.1200, App'x D. Thus, Capsugel knew, or had reason to believe, that mailing service of process to the Hood River address would most likely result in actual notice to JC Bio. *See* Or. R. Civ. P. 7D(3)(b)(ii)(C).

### B. Oregon's Catch-All Provision for Service of Process

Even assuming, *arguendo*, that Capsugel did not comply with Oregon's enumerated rules of service of process or that the presumption of valid service has been overcome, Capsugel's service of process upon JC Bio was nevertheless valid, as it satisfied Oregon's reasonable notice standard. *See* Or. R. Civ. P. 7D(1). The reasonable notice standard is satisfied by service "in any manner reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend." *Id.*

> Thus, ORCP 7 D(1) focuses not on the defendant's subjective notice but, instead, on whether the plaintiff's conduct was objectively, reasonably calculated to achieve the necessary end. That is, regardless of whether the defendant ever actually received notice, were the plaintiff's efforts to effect service reasonably calculated, under the totality of the circumstances then known to the plaintiff, to apprise the defendant of the pendency of the action?

*Davis Wright Tremaine, LLP v. Menken*, 45 P.3d 983, 986-87 (Or. App. 2002). In analyzing whether service was proper under the reasonable notice standard, courts must also consider a plaintiff's efforts to ensure service was proper both before and after the attempted service. *See Willer v. Tri-Cnty. Metro. Transp. Dist. of Oregon*, No. 07-CV-303-BR, 2007 WL 2156375, at *6 (D. Or. July 25, 2007).

As stated above, at the time it attempted to effectuate service of process, Capsugel knew that the Material Safety Data Sheet for Bright-Poly capsules and two certificates from Oregon Tilth to JC Bio listed JC Bio's address as being in Hood River. The Court of Appeals of Oregon

OPINION AND ORDER Page | 8

has previously held that the reasonable notice standard is satisfied where notice is effectuated at the place where the defendant represents an intent to receive notices of important information. *See Gallogly v. Calhoon*, 869 P.2d 346, 348-449 (Or. App. 1994); *see also Hoeck v. Schwabe, Williamson & Wyatt*, 945 P.2d 534, 540-41 (Or. App. 1997). The reasoning of *Gallogly* and *Hoeck* apply with equal force in this case. Capsugel was permitted to rely on the Hood River address at which JC Bio represented an intent to receive important notices. Therefore, Capsugel served JC Bio in a manner "reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend." Or. R. Civ. P. 7D(1).

Furthermore, on July 29, 2015, Capsugel informed Peter Heuser that it had served JC Bio in Hood River at the address that was provided to Oregon Tilth in connection with the organic certification of JC Bio. At that time, Heuser represented the other defendants in this matter, and Capsugel believed he represented JC Bio as well. Although Heuser also thought he represented JC Bio when he filed the Motion for Extension of Time on JC Bio's behalf on July 23, 2015, he was mistaken; JC Bio had not actually retained him.[5] Capsugel's efforts to ensure service was properly effectuated further supports a finding of proper service. *See Willer*, 2007 WL 2156375, at *6. Capsugel's service of process therefore satisfied Oregon's reasonable notice standard.

Thus, Capsugel properly served JC Bio with process.

## II. Personal Jurisdiction

Capsugel has made a prima facie showing that the court has personal jurisdiction over JC Bio with respect to each of Capsugel's asserted claims. There are two varieties of personal jurisdiction: general jurisdiction and specific jurisdiction. *See, e.g., Daimler AG v. Bauman*, 134

---

[5] JC Bio retained Heuser sometime after Capsugel contacted him about its efforts to effectuate service upon JC Bio at the Hood River address.

OPINION AND ORDER Page | 9

S. Ct. 746, 754 (2014). The court finds that it does not have general jurisdiction over JC Bio. The remainder of the jurisdictional analysis will therefore focus on specific jurisdiction. Specific jurisdiction must be analyzed with respect to each claim separately. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citation omitted).

### A. Specific Jurisdiction Regarding the Patent Infringement Claims

Capsugel has made a prima facie showing that the court has specific jurisdiction over JC Bio with respect to the patent infringement claims. Federal Circuit law governs personal jurisdiction with respect to patent infringement claims. *See, e.g., Electronics For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003); *Leupold & Stevens, Inc. v. U.S. Optics, Inc.*, No. 3:14-CV-00727-AC, 2015 WL 3606376, at *2 (D. Or. June 4, 2015).

In the context of a patent infringement claim, minimum contacts exist where (1) the defendant purposefully directed its activities at the forum, (2) the plaintiff's claim arises out of or relates to the defendant's contacts with the forum, and (3) the assertion of personal jurisdiction is fair and reasonable. *See Celgard*, 792 F.3d at 1377. The plaintiff bears the burden on the first two elements, and if it establishes them, the defendant has a "compelling" burden on the third element. *Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1985)).

Under Federal Circuit law, purposeful direction exists where a foreign defendant is alleged to have infringed a patent by selling infringing products in the form either directly or through an established distribution channel. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994); *accord Jamison v. Olin Corp.*, No. 03-1036-KI, 2004 WL 1098940, at *4 (D. Or. May 14, 2004); *see also Patent Enforcement Grp., LLC v. Chassis Tech, LLC*, No. 3:11-CV-925-BR, 2012 WL 12678, at *4 (D. Or. Jan. 3, 2012) (finding personal

jurisdiction over a defendant whose only contacts with Oregon was its sale of 99 units of an allegedly infringing product to Oregon wholesalers and retailers over the course of almost twelve years for a total of less than $1,000 in sales).

Here, JC Bio purposefully directed its activities at Oregon by selling Bright-Poly capsules to Bright Pharma—an Oregon wholesaler. *See Beverly Hills Fan*, 21 F.3d at 1565; *Patent Enforcement Grp.*, 2012 WL 12678, at *4. The record contains evidence of eleven shipments of Bright-Poly capsules from JC Bio to Bright Pharma.[6] JC Bio's direct shipment of Bright-Poly capsules to the Port of Portland further supports a finding of personal jurisdiction. *See Beverly Hills Fan*, 21 F.3d at 1565; *Patent Enforcement Grp.*, 2012 WL 12678, at *4

Additionally, Capsugel's infringement claims against JC Bio are entirely predicated on JC Bio's manufacture and distribution of Bright-Poly capsules. The infringement claims therefore arise out of and relate to JC Bio's Oregon-directed activities. *See, e.g., Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1233 (Fed. Cir. 2010); *Patent Enforcement Grp*, 2012 WL 12678, at *6.

Finally, JC Bio does not argue, and there is nothing in the record indicating, that this court's exercise of jurisdiction over JC Bio with respect to the patent infringement claims would

---

[6] In support of its Reply (#67), JC Bio included the Declaration of Walter Cao (#68). Cao testified, among other things, that all of the shipments of capsules from JC Bio to Bright Pharma were F.O.B. China. *Id.* ¶ 4, Ex. 1. At oral argument, Capsugel moved to strike Cao's declaration. Cao's Declaration does not change the court's conclusion that Capsugel has made a prima facie showing that the court has personal jurisdiction over JC Bio. *See, e.g., Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 769 F.3d 1371, 1378 (Fed. Cir. 2014) ("[A] sale may occur at multiple locations, including the location of the buyer, for purposes of personal jurisdiction." (citing *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579-80 (Fed. Cir. 1994))), *cert. granted*, No. 14-1513, 2015 WL 3883472 (U.S. Oct. 19, 2015); *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 471-72 (5th Cir. 2006) ("[W]e conclude that a F.O.B. term does not prevent a court from exercising personal jurisdiction over a non-resident defendant where other factors, such as the quantity and regularity of shipments, suggest that jurisdiction is proper." (footnote omitted)). Therefore, Capsugel's Motion to Strike is DENIED as moot.

be unfair or unreasonable. The court therefore declines to dismiss the infringement claims against JC Bio on fairness grounds. *See Patent Rights Prot. Grp.*, 603 F.3d at 1369 (stating that the defendant bears a "compelling" to show the exercise of personal jurisdiction over it would not be fair and reasonable (citing *World–Wide Volkswagen*, 444 U.S. at 292)).

Thus, Capsugel has made a prima facie showing of personal jurisdiction over JC Bio with respect to the patent infringement claims.

### B. Specific Jurisdiction Regarding the Lanham Act and Related State Law Claims

Capsugel has made a prima facie showing that the court has specific jurisdiction over JC Bio with respect to the Lanham Act and related state law claims. The specific jurisdiction test for tort claims, such as those brought under the Lanham Act and related state laws, is similar to the specific jurisdiction test for patent infringement claims. Minimum contacts exist where (1) the defendant purposefully directs its activities at the form, (2) the claim "arises out of or relates to the defendant's forum-related activities," and (3) the assertion of personal jurisdiction is fair and reasonable. *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). After the plaintiff establishes the first two elements, "the burden shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Fred Martin Motor Co.*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

However, unlike patent infringement claims, specific jurisdiction with respect to the Lanham Act and related state law claims is governed by Ninth Circuit law, which mandates application of the three-part "Calder-effects" test to determine whether the defendant purposefully directed its activities at the forum. *E.g. Brayton Purcell*, 606 F.3d at 1128 (internal quotation marks omitted) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). "Under this test, 'the

OPINION AND ORDER Page | 12

defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)).

In this case, the first two parts of the effects test are satisfied by JC Bio's obtaining an organic certification from Oregon Tilth, sending Bright-Poly capsules to Bright Pharma, and shipping Bright-Poly capsules to the Port of Portland. Those acts were intentional. Furthermore, the acts were expressly aimed at Oregon, as they all involved JC Bio reaching into Oregon to deal with Oregon entities. *See Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) ("[W]e have upheld the assertion of jurisdiction over defendants who have purposefully "reach[ed] out beyond" their State and into another . . . ." (quoting *Burger King*, 471 U.S. at 479-80)).

The third part of the effects test is also satisfied. "The harm element of the effects test is satisfied when a defendant's intentional act has foreseeable effects in the forum." *Slayden v. Schulz Boat Co.*, No. 3:13-CV-02259-AC, 2015 WL 225731, at *3 (D. Or. Jan. 16, 2015) (internal quotation marks omitted) (quoting *Brayton Purcell*, 606 F.3d at 1131). Here, it was foreseeable that JC Bio's providing mislabeled capsules to an Oregon wholesaler would cause Oregon consumers to be misled in their purchase of the capsules. It was also foreseeable that JC Bio's obtaining and utilizing an invalid accreditation from an Oregon entity would harm that entity's reputation upon discovery of the misrepresentation. *See Brayton Purcell*, 606 F.3d at 1131 (holding that harm to a forum business's reputation and goodwill can satisfy the harm element of the effects test).

All three parts of the effects test are satisfied. Consequently, JC Bio purposefully directed its activities at Oregon.

OPINION AND ORDER Page | 13

Additionally, the Lanham Act claims and related state law claims arise from and relate to JC Bio's Oregon contacts because they are based in part on JC Bio's obtaining an organic certification from Oregon Tilth and on JC Bio's manufacture, sale, and shipment of Bright-Poly capsules for Bright Pharma.

Finally, JC Bio does not argue, and there is nothing in the record indicating, that this court's exercise of jurisdiction over JC Bio with respect to the Lanham Act claims and related state law claims would be unfair or unreasonable. The court therefore declines to dismiss the Lanham Act and related state law claims against JC Bio on fairness grounds. *See Fred Martin Motor Co.*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 476–78).

Thus, Capsugel has made a prima facie showing of personal jurisdiction over JC Bio with respect to the Lanham Act and related state law claims.

### C. Federal Long Arm Statute

Capsugel has made a prima facie showing that the court has personal jurisdiction over JC Bio, with respect to the federal claims asserted against it, pursuant to Federal Rule of Civil Procedure 4(k)(2), sometimes called the "federal long-arm statute." Although personal jurisdiction has already been sufficiently established on the grounds discussed above, Rule 4(k)(2) provides an additional and alternative basis for the court's exercise of personal jurisdiction over JC Bio with respect to the federal claims asserted against it. Rule 4(k)(2) confers personal jurisdiction over federal claims outside state-court jurisdiction. Under both Ninth Circuit and Federal Circuit law, personal jurisdiction is established under this rule when (1) the claim arises under federal law, (2) the defendant is not subject to the personal jurisdiction of any state court of general jurisdiction, and (3) the federal court's exercise of personal jurisdiction comports with due process. *See, e.g., Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d

1403, 1412 (Fed. Cir. 2009); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461-62 (9th Cir. 2007).

It is beyond dispute that the patent infringement and Lanham Act claims arise under federal law. Therefore, the first element of Rule 4(k)(2) is satisfied.

JC Bio bears the burden on the second element of Rule 4(k)(2). *See Holland Am. Line*, 485 F.3d at 461 (citation omitted) ("If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)."); *accord Touchcom*, 574 F.3d 1403, 1415 (Fed. Cir. 2009). JC Bio alleges that it is not subject to personal jurisdiction in Oregon. It has failed to identify any other state where it is subject to personal jurisdiction. Consequently, the second element of Rule 4(k)(2) is satisfied. *See Holland Am. Line*, 485 F.3d at 461; T*ouchcom*, 574 F.3d at 1415.

As to the third and final element of Rule 4(k)(2), the due process analysis is "nearly identical to traditional personal jurisdiction analysis with one significant difference": rather than considering contacts between the JC Bio and Oregon, the court considers JC Bio's contacts with the United States as a whole. *Holland Am. Line*, 485 F.3d at 462; *accord Touchcom*, 574 F.3d at 1416. Capsugel offers the following facts to satisfy this element of Rule 4(k)(2): JC Bio contracted with Oregon Tilth to obtain an organic certification for capsules that did not qualify for one; JC Bio represented itself has having a place of business in Hood River, Oregon in the Material Safety Data Sheet for Bright-Poly capsules, in five certifications from Oregon Tilth, in Oregon Tilth's online listing of "certified organic operators," and in the USDA's most recent online listing of "certified USDA organic operations"; JC Bio supplied Bright-Poly capsules to Bright Pharma; JC Bio mislabeled packages of Bright-Poly capsules by using the USDA and Oregon Tilth "organic" labels prior to sending the packages to Bright Pharma in the United

States; and JC Bio shipped Bright-Poly capsules intended for Bright Pharma to ports throughout the United States, including eight shipments arriving in California, one shipment arriving in Oregon, one shipment arriving in Florida, and one shipment arriving in New York.

This evidence establishes that JC Bio purposefully directed its activities at the United States. *See Goes Int'l, AB v. Dodur Ltd.*, No. 3:14-CV-05666-LB, 2015 WL 5043296, at *9 (N.D. Cal. Aug. 26, 2015); *Touchcom*, 574 F.3d at 1418; *see also Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1273 (Fed. Cir. 2010). In so holding, the court recognizes that a third party's contacts with JC Bio (for example, Oregon Tilth's provision of the certifications) do not form a sufficient basis for personal jurisdiction. *See, e.g., Walden*, 134 S. Ct. at 1122. However, because JC Bio had to reach into the United States to acquire the certifications and listings cited above, JC Bio has sufficient minimum contacts with the United States to justify the court's assertion of personal jurisdiction over it. *See id.* ("[W]e have upheld the assertion of jurisdiction over defendants who have purposefully 'reach[ed] out beyond' their State and into another . . . ." (quoting *Burger King*, 471 U.S. at 479-80)).

Additionally, Capsugel's patent infringement and Lanham Act claims arise out of and relate to JC Bio's activities in the United States because all of those claims are predicated on either JC Bio's obtaining organic certifications from Oregon Tilth and the USDA or JC Bio's manufacture, sale, and shipment of Bright-Poly capsules for Bright Pharma.

Finally, JC Bio does not argue, and there is nothing in the record indicating, that this court's exercise of jurisdiction over JC Bio with respect to the federal claims would be unfair or unreasonable. The court therefore declines to dismiss the federal claims against JC Bio on fairness grounds. *See Patent Rights Prot. Grp.*, 603 F.3d at 1369 (citing *World–Wide Volkswagen*, 444 U.S. at 292); *Fred Martin Motor Co.*, 374 F.3d at 802 (quoting *Burger King*,

471 U.S. at 476–78); *see also Holland Am. Line*, 485 F.3d at 462 ("The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis . . . .").

Thus, Capsugel has made a prima facie showing of personal jurisdiction over JC Bio with respect to the federal claims asserted against it.

## CONCLUSION

For the reasons provided above, JC Bio's Motion to Dismiss (#48) is DENIED.

Dated this 13th day of November, 2015.

/s/ *[signature]*
Honorable Paul Papak
United States Magistrate Judge